**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sema Logistics Incorporated, | No. CV-23-02098-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Alternative Heavy Towing Incorporated, | |
| Defendant. | |

Plaintiff Sema Logistics Inc. brings federal and state causes of action against defendant Alternative Heavy Towing Inc. ("AHT") stemming from AHT's towing of Sema's truck and trailer after the truck caught fire in a highway emergency. Sema brings state claims for conversion, consumer fraud, breach of contract, and promissory estoppel. It brings federal claims for apportionment under the Carmack Amendment and for declaratory judgment under the Declaratory Judgment Act.

AHT filed a motion to dismiss under Rule 12(b)(6) arguing it is exempt from the Carmack Amendment and that the Carmack Amendment preempts all Sema's state law claims. It also argued that if the state law claims were not preempted, they still failed. The Carmack Amendment does not apply to AHT here because it provided emergency towing services to Sema. But that also means the Carmack Amendment does not preempt Sema's state law claims, some of which have been adequately pleaded. Thus, the motion to dismiss is granted in part and denied in part.

**I.   Factual Background**

Sema is a company providing the "door-to-door transportation of cars" and helps coordinate the transportation logistics throughout the United States. (Doc. 1 at 4.) It owns both a truck and a "high end" enclosed auto transport trailer. (Doc. 1 at 3.) AHT "represents to the public that it specializes in heavy duty towing[.]" (Doc. 1 at 4.) Sema's truck caught on fire while it was hauling six cars in the trailer. (Doc. 1 at 4.) AHT "was called to tow the burnt truck and to rescue the cargo." (Doc. 1 at 4.) AHT "safely towed the truck and the hooked [t]railer from the accident scene to its yard[.]" (Doc. 1 at 4.)

The day the truck was towed, Sema's president "demanded the [t]railer's immediate return and requested the amount owed for the towing." (Doc. 1 at 5.) The next day, AHT provided Sema with an invoice for $1,265.00 for the tow. (Doc. 1 at 5.) AHT told Sema that "it would be unsafe" for them "to attempt to unload and remove the cars from the [t]railer without special equipment and offered to assist" Sema "with the unloading of the cargo to its yard, completion of the transportation, and/or to deliver the six cars to the consignees." (Doc. 1 at 6) That day, AHT "unloaded and safely removed two of the cars" from the trailer but allegedly "refused to release" one of the other four cars to its owner "despite repeated demands" to do so. (Doc. 1 at 5.)

Thereafter AHT allegedly "refused to unload the remaining cars and to release them to their owners unless fully paid in advance." (Doc. 1 at 6.) After a week of discussions between Sema and AHT, "[Sema's] insurer issued a check [to AHT] for $4,550.50." (Doc. 1 at 8.) Sema alleges AHT "confirmed" it "received the check" but that it "would not unload the remaining cars and would not detach the [t]railer from the burnt truck." (Doc. 1 at 9.) AHT allegedly told Sema that the trailer "will remain at AHT as-is" and it would "store" one of the cars "until" Sema "either retrieve[s] the loaded tractor-trailer or agree[s] to [ ] additional services." (Doc. 1 at 9.) At that time Sema alleges AHT "asserted possession, dominion, and control over the [t]railer and the cargo[.]" (Doc. 1 at 9.) Sema also alleges AHT failed to "perform under the[ir] oral contract . . . to unload the six cars" and "wrongfully asserted possession" over them. (Doc. 1 at 9.)

AHT eventually released the truck and trailer. (Doc. 1 at 14.) Sema alleges that after it inspected the trailer it discovered that it "and the four cars [remaining on it] had been further damaged as a result of the units being left loaded and exposed to the elements for two months[.]" (Doc. 1 at 14.) Sema alleges "the fire did not cause this damage but [was] solely the result of [AHT's] reckless and w[a]nton acts, conduct, and omissions" between the date of the tow and the release of the trailer. (Doc. 1 at 14.) As a result, Sema brings claims for conversion, consumer fraud, breach of contract, promissory estoppel, Carmack Amendment apportionment, and a declaration of rights. (Doc. 1 at 14–29.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

## III. Sema's Carmack Amendment Claim Fails

Sema asserts a Carmack Amendment claim for apportionment. (Doc. 1 at 26–27 (citing 49 U.S.C. § 14706(b)).) But AHT is not liable under the Carmack Amendment here because of the statute's emergency towing exception.[1] Sema's claim under the Carmack Amendment is therefore dismissed. But AHT's argument that the Carmack Amendment

---

[1] The parties also discuss the applicability of 49 C.F.R. §§ 390.23 and 395.3. (Docs. 18 at 7, 19 at 10, 21 at 4.) But those regulations appear to only apply to the maximum number of hours certain drivers may work. *See Acuity Ins. Co. v. McDonald's Towing & Rescue, Inc.*, 747 F. App'x 377, 381 n.1 (6th Cir. 2018) ("Section § 390.23 is part of the regulatory scheme for motor carrier safety, whereas the Carmack Amendment focuses on economic liability for cargo damages.") As such, the court does not consider those regulations here.

globally preempts Sema's state law claims—despite the statute's inapplicability here—also fails. (*See* Docs. 18 at 6–7, 21 at 2–4.)

"The Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687–88 (9th Cir. 2007). The purpose of the Carmack Amendment was largely to provide "a uniform national liability policy for interstate carriers." *Id.* (citing *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992)). But certain "[m]iscellaneous motor carrier transportation" activities are exempted from the Carmack Amendment, including "the emergency towing of an accidentally wrecked or disabled motor vehicle." 49 U.S.C. § 13506(b)(3). Thus, if AHT engaged in "emergency towing"—even of a carrier vehicle or cargo that would itself be subject to the Carmack Amendment—the Carmack Amendment does not apply. *See Interstate Towing Ass'n, Inc. v. City of Cincinnati, Ohio*, 6 F.3d 1154, 1158 n.4 (6th Cir. 1993) (interpreting the statutory predecessor to § 13506(b) as "indicat[ing] Congress's intent not to preempt local towing services").

The emergency towing exception applies here. Emergency towing "happens in response to unforeseen circumstances requiring immediate attention." *Acuity Ins. Co., v. McDonald's Towing & Rescue, Inc.*, 747 F. App'x 377, 381 (6th Cir. 2018). Here, Sema alleges its "truck caught on fire" on the highway and "AHT was called to tow the burnt truck and to rescue the cargo." (Doc. 1 at 4.) As was the case in *Acuity*—in which the plaintiff's truck broke down on the highway and the defendant was called to tow it—AHT's tow qualifies as an emergency tow exempt from the Carmack Amendment. *See id.* at 378, 381–82.

When a defendant is exempt from the Carmack Amendment, state law claims are not preempted. *See Hunter v. United Van Lines*, 746 F.2d 635, 638 (9th Cir. 1985) (observing that plaintiffs' contract claim would have been completely preempted *if* it had satisfied Carmack's minimum amount in controversy); *Gaede & Glaudert Assecuradeur*

4

*GmbH & Co. KG v. Mesa Moving & Storage Boise, LLC*, No. 117-CV-00354-EJL-CWD, 2018 WL 6843728, at *2 (D. Idaho Apr. 27, 2018) ("*If* the Carmack Amendment applie[d], *then* it would [have] preempt[ed] plaintiffs' breach of contract claim.") (citing *Hall*, 476 F.3d at 688) (emphasis added). Because AHT's emergency tow is exempted from the Carmack Amendment, Sema's apportionment claim is dismissed, but its state claims are not preempted.

**IV.    Sema Has Plausibly Pleaded a Conversion Claim**

Sema alleges AHT "wrongfully and without authorization assumed and exercised control, dominion, possession, and/or ownership" over its personal property. (Doc. 1 at 14.) Arizona law defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (simplified).

AHT does not counter Sema's conversion claim with any legal arguments. (*See* Docs. 18 at 8–10, 21 at 5–6.) Instead, it alleges new facts not in Sema's complaint and argues Sema's conversion claim "will fail." (Doc. 21 at 6.) But generally a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion" and "factual disputes are not resolved in a motion to dismiss" because in that context the court must accept the complaint's factual allegations as true.[2] *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted); *Am. Bank of the N. v. Mouilso*, No. CV-16-08207-PCT-GMS, 2018 WL 2065066, at *1 (D. Ariz. May 3, 2018). Instead, a Rule 12(b)(6) motion "tests the legal sufficiency of a claim" and claims can "be dismissed [under the rule] only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

---

[2] Although documents "incorporated into the complaint by reference[,]" are an exception to this rule, it is not clear that the phone call AHT references (Doc. 18 at 9) is the same one Sema refers to in its complaint. (Doc. 1 at 9–10). The court therefore declines to consider AHT's factual assertions regarding a "phone call" between the parties. (*See* Doc. 18 at 9.)

5

Because Sema has pleaded ample facts to support its conversion claim (*see* Docs. 1 at 6, 8–13, 15–16), AHT's motion to dismiss that claim is denied.

## V. Sema's Consumer Fraud Claim Fails

Sema has not pleaded its consumer fraud claim with "particularity" as Rule 9(b) requires. It is well-established "in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Yess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "While a federal court will examine state law to determine whether the elements of fraud have been pleaded sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Id.* That requirement demands that the plaintiff plead "the who, what, when, where, and how of the misconduct charged." *Id.* (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)) (simplified); *see also Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, 609 F. Supp. 3d 930, 941 (D. Ariz. 2022) (noting Arizona's consumer fraud statute is subjected to Rule 9(b)'s particularity requirements).

Arizona's consumer fraud statute states that "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact *with intent* that others rely on such concealment, suppression or omission, *in connection with* the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Arizona Rev. Stat. § 44-1522(A) (emphasis added). Sema has not met its burden to plead a claim under the statute with particularity.

Although Sema allegedly made payments to AHT regarding the towing and storage of its property, Sema has not alleged any fraud "*in connection with*" that "sale or advertisement." Arizona Rev. Stat. § 44-1522(A) (emphasis added). The only advertisements Sema's complaint references are AHT's claims to "provide accident and wreck recovery services . . . promot[ing] and represent[ing] to the public that it specializes in heavy duty towing[.]" (Doc. 1 at 4.) Sema was also aware that "[o]n its public-facing

6

website [AHT] represents that '[t]ypically having your vehicle towed is not expensive, but storing your vehicle does have a tendency to add up rapidly since it accumulates daily." (Doc. 1 at 5.) But far from alleging either of these claims were fraudulent, Sema says "AHT safely towed the[ir] truck and the hooked Trailer from the accident scene to its yard[.]" (Doc. 1 at 4.) Additionally, Sema's complaint does not make clear that it was *Sema* who called AHT to tow its trailer, which means it may not have relied on AHT's representations at all. (Doc. 1 at 4.)

Sema alleges it has standing to bring this claim because it "is a direct victim of the illegal, unfair, and fraudulent business practices described in this Complaint in which [AHT] engaged in solely for their financial benefit while providing and advertising AHT's towing and transportation services." (Doc. 1 at 17.) Because it is not clear what advertisement Sema is referring to, when or where it saw the advertisement, and how that advertisement affected it, this allegation does not help Sema plead its consumer fraud claim with particularity as required by Rule 9(b). In other words, Sema has alleged the "who" of the alleged fraud (AHT), but it has not pleaded the "what, when, where, and how" of it. *See Yess*, 317 F.3d at 1097. As a result, Sema has not pleaded with particularity that AHT committed consumer fraud in connection with a sale or advertisement.

Sema likewise fails to plead unfair acts or practices which caused it "consequent and proximate injury resulting from [a] promise" as an Arizona consumer fraud claim requires. *See Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) (citing *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. Ct. App. 1980)). "An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Id.* Sema alleges AHT was injured because AHT "diminish[ed]" its property rights "to obtain money without authority or justification." (Doc. 1 at 17.) It also alleges that AHT "uttered multiple false and/or misleading statements with the intent that [Sema] and others rely upon such misstatement . . ." (Doc. 1 at 17.) This is not enough to satisfy Rule 9(b)'s particularity requirement because, again, Sema does not allege the what, where, when, and how of this alleged fraud, only the who (AHT). *See Yess*, 317 F.3d at 1097.

Sema's other allegations of unfair acts or practices are not for injuries it has suffered but instead for injuries it may suffer in the future. (*See* Doc. 1 at 17 (alleging "schemes" that hurt "other individuals and entities" who are "in need of towing services"); Doc. 1 at 18 (alleging harm to "affected parties" or an "owner/insurer"); *see also* Doc. 1 at 19–23.) These allegations are not sufficient to allege with particularity that AHT committed fraud and harmed Sema as a result as Rule 9(b) requires. For these reasons, Sema's consumer fraud claim is dismissed.[3]

**VI.   Sema Has Adequately Pleaded Breach of Contract and Promissory Estoppel**

AHT seeks dismissal of Sema's promissory estoppel claim by arguing a plaintiff may not recover for breach of contract and promissory estoppel on the same facts. (Doc. 18 at 13.) AHT also argues Sema's promissory estoppel claim should be dismissed because it "will be unable to meet its burden[.]" (Doc. 18 at 14.) These arguments fail.

AHT's apparent belief that a complaint cannot allege alternative theories of recovery is incorrect because "a plaintiff can pursue multiple, even if inconsistent, theories of recovery in the same suit[.]" *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692, 701 (9th Cir. 2021). AHT cites to cases asserting that promissory estoppel is an alternative to a contract claim and is only available in the absence of a contractual remedy (Doc. 18 at 13), but that has no bearing on whether both claims may proceed past the motion-to-dismiss stage.

AHT's claim that Sema "will be unable to meet its burden" as to its breach of contract claim fails because Sema must only *plausibly* plead that claim to survive a motion to dismiss. (Doc. 18 at 13–14.) *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555 (internal citations omitted)). In Arizona, a party asserting a claim for breach of contract must prove (1) the existence of the contract, (2) a breach of that contract, and (3) resulting damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004).

---

[3] Sema alleges in its consumer fraud claim that AHT violated Arizona's towing laws. (*See* Docs. 1 at 20, 19 at 16 (citing Arizona Rev. Stat. § 28-4847).) It is not clear if that statute allows for a private right of action, but in any event, because the court has dismissed the consumer fraud claim referring to the towing statute, the court need not analyze that issue.

As for the first element, "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983) (quoting Restatement (Second) of Contracts § 50). Sema has plausibly pleaded these elements.

Sema alleges AHT provided it with an invoice "representing the alleged charges for the towing." (Doc. 1 at 5.) It also asserts AHT "offered to assist Sema Logistics with the unloading of the cargo to its yard[.]" (Doc. 1 at 6.) Sema "accepted the offer in part and orally agreed to hire and compensate" AHT. (Doc. 1 at 6.) AHT then "unloaded and safely removed two of the cars from the [t]railer." (Doc. 1 at 6.) But AHT allegedly "refused to release [one car] to its owner despite repeated demands" and "refused to unload the remaining cars and to release them to their owners unless [Sema] fully paid in advance." (Doc. 1 at 6.) Sema makes additional claims regarding the alleged contract with AHT and AHT's alleged breach. (*See* Doc. 1 at 7–13.) Thus, Sema has pleaded sufficient facts, taken as true, to plead a breach of contract claim. AHT's argument that there is a "vast amount of evidence in this case [that] refutes [Sema's] claims" (Doc. 18 at 13) is inappropriate in the context of a motion to dismiss.

Likewise, Sema need only plausibly allege promissory estoppel to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555 (internal citations omitted)). A promissory estoppel claim allows a plaintiff to recover for detrimental reliance on a promise. *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. App. Ct. 2002). In Arizona this claim requires "a promise[ ] which the promissor should reasonably foresee would cause the promisee to rely [on and] upon which the promisee actually relies to his detriment." *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 736 P.2d 13, 16 (Ariz. App. Ct. 1987). Additionally, claims of promises for purposes of promissory estoppel must be specifically pleaded in Arizona. *See Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 493 P.2d 1220, 1224 (Ariz. 1972). Sema alleges AHT made "promises that induced [Sema] to leave the [t]railer at [AHT's] yard with the expectation that [AHT] would unload

the six cars as promised and to direct its insurer to pay the full compensation requested by [AHT]." (Doc. 1 at 25.) Sema alleges they "relied" on those promises "to their detriment and tendered $4,555.50" to AHT as AHT had requested. (Doc. 1 at 25.)

Sema has specifically pleaded a promise that it relied on to its detriment and which AHT should reasonably have foreseen Sema would rely on. AHT's motion to dismiss Sema's promissory estoppel claim is therefore denied.

**VII.   Sema's "Declaration of Rights" Claim Fails and is Dismissed**

Sema makes a claim for a "declaration of rights" by "seek[ing] a judicial declaration" as to certain facts—such as one asserting that AHT's "demand and retention of $4,555.50 was unlawful"—and it requests a mandatory injunction to restrain AHT's future actions like "charg[ing] fees for [ ] transportation and storage after a release form, demand for return, and payment has been made." (Doc. 1 at 28–29.)

It is not clear under which statute Sema makes this claim, but because the dismissal of Sema's Carmack Amendment claim leaves the court with only jurisdiction via diversity of citizenship and a declaration of rights "is procedural, not substantive[,]" the federal Declaratory Judgment Act applies. *Anderson v. Everest Nat. Ins. Co.*, 984 F. Supp. 2d 974, 977 (D. Ariz. 2013) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)); *West Publ'g Co. v. McColgan*, 138 F.2d 320, 324 (9th Cir. 1943) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)) ("The Federal Declaratory Judgment Act was not a jurisdiction-conferring statute, but an act to establish a new procedure in the federal courts . . . 'Thus, the operation of the Declaratory Judgment Act is procedural only.'").

With one possible exception that does not apply here, the Declaratory Judgment Act does not create a cause of action; it "creates a remedy, not rights." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (citing *Malhan v. Sec. U.S. Dep't of State*, 938 F.3d 453, 457 n.3 (3d Cir. 2019)); *see also id.* at 878–79 (collecting cases); *cf. id.* at 879 (permitting a defensive declaratory judgment claim in the patent context). Insofar as Sema asserts a standalone declaratory judgment claim, that claim is dismissed.

**VIII.    Conclusion**

Sema's Carmack Amendment claim is dismissed because AHT is exempt from the statute under the emergency tow exception. Sema's state law claims are not subject to Carmack preemption, but its consumer fraud claim is dismissed because it does not meet the requisite pleading standard. Sema's declaratory judgment claim is also dismissed because the Declaratory Judgment Act establishes a remedy, not a cause of action. Sema's conversion, breach of contract, and promissory estoppel claims may proceed.

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Carmack Amendment apportionment and standalone Declaratory Judgment Act claims are dismissed without leave to amend. Its consumer fraud claim is dismissed with leave to amend. If plaintiff wishes to amend its consumer fraud claim, it shall file an amended complaint no later than **November 20, 2024**. If no amended complaint is filed by that date, defendant shall file its answer no later than **November 27, 2024**. If an amended complaint is filed, defendant shall respond to the amended complaint as required by the applicable rule. Sema's conversion, breach of contract, and promissory estoppel claims may proceed.

Dated this 5th day of November, 2024.

Honorable Krissa M. Lanham
United States District Judge